**MANATT, PHELPS & PHILLIPS, LLP**
John M. LeBlanc (SBN 155842)
**E-mail:** JLeBlanc@manatt.com
Ileana M. Hernandez (SBN 198906)
**E-mail:** IHernandez@manatt.com
Luke L. Punnakanta (SBN 293488)
**E-mail:** LPunnakanta@manatt.com
11355 W. Olympic Blvd
Los Angeles, California 90064
Telephone: (310) 312-4228
Facsimile: (310) 914-5855

**WILLIAMS & CONNOLLY LLP**
Brendan V. Sullivan, Jr. (*Pro Hac Vice* application forthcoming)
William R. Murray, Jr. (*Pro Hac Vice* application forthcoming)
Steven M. Cady (*Pro Hac Vice* application forthcoming)
725 Twelfth Street, N.W.
Washington, D.C. 20005-5901
Telephone: (202) 434-5000
Facsimile: (202) 434-5029
**E-mail:** scady@wc.com

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATHLEEN STEINLEY, MARTIN HAROLD STEINLEY, and MARTIN ALEXANDER STEINLEY, Individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>HEALTH NET, INC., HEALTH NET LIFE INSURANCE CO., HEALTH NET OF CALIFORNIA, INC., MANAGED HEALTH NETWORK, INC., and CENTENE CORP.,<br><br>Defendants. | Case No. 2:18-cv-5458<br><br>**NOTICE OF REMOVAL** |

Pursuant to 28 U.S.C. §§ 1441, 1446, and 1453, defendants Health Net, Inc., Health Net Life Insurance Co., Health Net of California, Inc., Managed Health Network, Inc., and Centene Corp. ("Defendants") give notice of the removal of the above-captioned matter to the United States District Court for the Central District of California. As grounds for removal, Defendants state as follows:

## I.     NATURE OF THE REMOVED CASE

1. On May 4, 2018, Plaintiffs filed the action captioned *Kathleen Steinley, Martin Harold Steinley, and Martin Alexander Steinley, individually and on behalf of others similarly situated v. Health Net, Inc., Health Net Life Insurance Co., Health Net of California, Inc., Managed Health Network, Inc., and Centene Corp.*, in the Superior Court of California, County of Los Angeles. The case was assigned Case Number BC702297.

2. All Defendants were served on May 23, 2018.

3. Plaintiffs allege that they were insureds under a Health Net Small Business insurance policy starting on December 1, 2015 (hereinafter the "policy" or "plan"). Compl. ¶ 40. Plaintiffs purchased this policy through the business of Martin Harold Steinley ("Harold").

4. Plaintiffs further allege that, when plaintiff Martin Alexander Steinley ("Alex") required inpatient Behavioral Health/Substance Use Disorder ("BH/SUD") treatment, they struggled to find a facility that would accept him. *See id.* ¶¶ 45–71. The reason for this difficulty, Plaintiffs allege, is that Health Net did not provide an adequate network of providers or adequate reimbursement for treatment with an out-of-network provider. *Id.* Once Plaintiffs found a facility that would accept Alex, Health Net allegedly refused to reimburse Plaintiffs and the facility at the rates that the policy and California law required. *Id.* ¶ 72–74.

5. Based upon the above conduct, Plaintiffs bring six causes of action:
   a. Violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.*, *see* Compl. ¶ 119–120;

      b.    Violation of California's False Advertising Law, Cal. Bus. & Prof. Code § 17200 *et seq.*, *see* Compl. ¶ 136;

      c.    Violation of California's Consumer Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.*, *see* Compl. ¶ 147;

      d.    Breach of Contract, Compl. ¶ 163;

      e.    Breach of the Implied Covenant of Good Faith and Fair Dealing, *id.* ¶ 166; and

      f.    Declaratory Relief, *id.* ¶ 173.

6. Federal jurisdiction exists over this case for two independent reasons. First, federal question jurisdiction exists because the Employee Retirement Income Security Act of 1974 (ERISA) completely preempts at least one of Plaintiffs' claims. Second, federal jurisdiction exists under the Class Action Fairness Act.

## II. THIS REMOVAL IS PROCEDURALLY PROPER

7. This notice of removal is timely under 28 U.S.C. § 1446(b)(1), as the date of filing is within 30 days of the date of service on all defendants, May 23, 2018.

8. Venue is proper in the Central District of California under 28 U.S.C. § 1441(a) because the district encompasses Los Angeles County.

9. All defendants consent to this removal.

10. Pursuant to 28 U.S.C. § 1446(a), true and correct copies of all of the pleadings filed in the State Court are attached hereto as Exhibit A.

11. A copy of the written notice required by 28 U.S.C. § 1446(d), attached hereto as Exhibit B, is being filed in the State Court and will be served on Plaintiffs.

## III. FEDERAL JURISDICTION EXISTS BECAUSE THIS CASE PRESENTS A FEDERAL QUESTION UNDER ERISA

12. The plan under which Plaintiffs purport to sue, which they purchased through Harold's business, is governed by ERISA. Claims relating to the plan are therefore "governed by the rights and remedies ERISA specifies." *Raymond B.*

*Yates, M.D., P.C. Profit Sharing Plan v. Hendon*, 541 U.S. 1, 6 (2004). Under ERISA, Harold is a participant in the plan, and Alex and Kathleen are beneficiaries.

13. Section 502 of ERISA, codified at 29 U.S.C. § 1132, specifies the rights and remedies available to Plaintiffs. Under Section 502(a)(1)(B), an ERISA plan participant or beneficiary may bring suit "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

14. "The purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004). Section 502(a) provides an "integrated enforcement mechanism" for achieving that purpose. *Id.* To protect its uniform regime, ERISA preempts "any state law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy." *Id.* at 209. Section 502 does this by "convert[ing] state causes of action into federal ones," including "for purposes of determining the propriety of removal." *Id.* Thus, where a plaintiff's claim is subject to preemption under section 502(a), that claim presents a removable federal question, no matter what label the plaintiff gives it. *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 66 (1987).

15. Courts apply a two-part test, derived from *Davila*, for determining whether a claim is completely preempted by ERISA. First, the court asks whether the plaintiff, "at some point in time, could have brought the claim under" section 502. *Fossen v. Blue Cross and Blue Shield of Mont., Inc.*, 660 F.3d 1102, 1108 (9th Cir. 2011) (internal quotation marks omitted). If so, then the claim is completely preempted if "there is no other independent legal duty that is implicated by a defendant's actions." *Id.* If one claim is preempted, then that claim presents a federal question and the case is removable. *Melamed v. Blue Cross of Cal.*, 557 F. App'x 659, 661 (9th Cir. Feb. 12, 2014) (unpublished).

16. ERISA completely preempts all of Plaintiffs' claims. This is most clear with respect to Plaintiffs' breach of contract and breach of implied covenant of good faith and fair dealing claims.

17. As to the first *Davila* prong, both claims could be brought under Section 502.

18. The contract and implied covenant claims seek "to recover benefits due to [plaintiffs] under the terms of [the] plan." 29 U.S.C. § 1132(a)(1)(B). In the breach of contract count, Plaintiffs allege that Defendants "breached the terms and provisions" of the policy by "paying less for medical services" than the policy required. Compl. ¶ 163. They are suing to recover their alleged increased "out of pocket expenses" to pay amounts they contend should have been covered under the policy. Compl. ¶ 73. Likewise, in the implied covenant count, Plaintiffs state that they have "suffered damages under [their] PPO Polic[y]" on account of those same alleged breaches. *Id.* ¶ 168.

19. The second *Davila* prong is met as well, as the "legal duty" implicated by these claims stems from the ERISA plan. *Fossen*, 660 F.3d at 1108. Where the "factual basis for relief pleaded in [the] complaint" relates to the refusal of a plan administrator "to reimburse [plaintiff] for the . . . care he received," the relevant duty stems from ERISA, and ERISA preempts the cause of action. *Cleghorn v. Blue Shield of Cal.*, 408 F.3d 1222, 1226 (9th Cir. 2005); *see also Durham v. Prudential Ins. Co. of Am.*, 236 F. Supp. 3d 1140, 1149 (C.D. Cal. 2017) (breach of contract and breach of implied covenant of good faith and fair dealing claims preempted because "duties with respect to reviewing and deciding benefit claims in ERISA-governed benefit plans are covered exclusively by ERISA"); *Leonard v. MetLife Ins. Co.*, No. 2:12-cv-10003, 2013 WL 12210177, at *5 (C.D. Cal. Feb. 25, 2013) ("The duties imposed by the implied covenant of good faith and fair dealing do not arise independently of ERISA or the plan terms.").

20. Accordingly, these claims are completely preempted by ERISA Section 502, and this case therefore presents a federal question.

## IV. FEDERAL JURISDICTION EXISTS UNDER CAFA

21. CAFA grants district courts original jurisdiction over class actions where there is minimal diversity, the putative class contains at least 100 members, and the amount in controversy exceeds $5 million. 28 U.S.C. § 1332(d)(2), (5). For notice of removal purposes, the defendant need only make "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547, 554 (2014).

22. Plaintiffs are all California citizens. Compl. ¶ 1.

23. Defendant Centene Corporation is a Delaware corporation whose principal place of business is in Missouri. Compl. ¶ 6. Centene Corporation is therefore a citizen of Delaware and Missouri.

24. The minimal diversity requirement is met, because Centene Corporation is not a citizen of the same state as the Plaintiffs. *See* 28 U.S.C. § 1332(d)(2)(A).

25. Plaintiffs define their proposed class as "[a]ll California residents who purchased a Health Net PPO Policy on or after October 1, 2013." Compl. ¶ 106. Plaintiffs allege that the class contains "thousands of persons." Compl. ¶ 108. Therefore, the proposed class, if one is determined by this Court to exist, has more than 100 members.

26. Defendants deny that Plaintiffs are entitled to any relief, but for amount-in-controversy purposes, the Court must assume that Plaintiffs succeed on their claims. *See Lewis v. Verizon Comm'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010) ("The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability."). Under this standard, Plaintiffs' complaint meets the $5 million amount-in-controversy requirement.

27. Plaintiffs allege that Defendants used inapplicable reimbursement rates that allowed them to underpay for BH/SUD care, thus increasing the class's out of pocket expenses. Compl. ¶ 73. Plaintiffs allege that these reimbursement rates were too low by a figure of "approximately 70-80% of the providers' billed charges." Compl. ¶ 24(f). They further allege that they suffered a "resulting increase in . . . out of pocket expenses" as a result of providers passing those unbilled amounts on to them. *Id.* Thus, Plaintiffs seek to recover for these alleged underpayments. See *id.*, Prayer for Relief ¶ 4 (requesting "damages" for "failure to provide coverage under the contracts").

28. As an indication of what Plaintiffs consider the magnitude of the alleged underpayments, Plaintiffs allege that Defendants had incurred a $390 million liability for unpaid BH/SUD claims by March 2016. Compl. ¶ 92.[1]

29. Plaintiffs also allege that plaintiffs have paid "inflated premiums." *Id.* ¶ 122. Defendants deny that Plaintiffs paid inflated premiums, but the premiums paid by the class over the period for which Plaintiffs claim damages are many times larger than $5 million. See *Lewis*, 627 F.3d at 399 (holding that amount in controversy over claims of allegedly unauthorized billing included all billed amounts; defendant did not need to make initial demonstration of which amounts were unauthorized).

30. Plaintiffs further request a declaration regarding the parties' respective rights concerning, among other things, the reimbursement rate at which Defendants will be obligated to pay future claims. Compl. ¶¶ 173–174. "In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 (9th Cir. 2002) (internal quotation marks omitted). Defendants

---

[1] While Defendants dispute that the $390 million reserve related entirely to BH/SUD claims, the allegations in the Complaint control for amount-in-controversy purposes. See *Cain v. Hartford Life and Accident Ins. Co.*, 890 F. Supp. 2d 1246, 1249 (C.D. Cal. 2012) ("[A] court must assume that the allegations of the complaint are true.").

deny that Plaintiffs are entitled to a declaration establishing a different payment methodology than the one they now use—a methodology the State of California has approved. But if a declaration were granted increasing Defendants' reimbursement rate, as Plaintiffs seek, then Defendants would be forced to increase their out-of-network BH/SUD reimbursements by over $5 million going forward.

31. Finally, Plaintiffs claim both punitive damages and attorneys' fees. *See, e.g.,* Compl. ¶¶ 132, 157 (attorneys' fees); 139 (punitive damages). Defendants deny that Plaintiffs are entitled to punitive damages or attorneys' fees, but both are properly included in the amount in controversy. *See, e.g., Adkins v. J.B. Hunt Transport, Inc.*, 293 F. Supp. 3d 1140, 1147–48 (E.D. Cal. 2018). For amount-in-controversy purposes, courts commonly consider punitive damages at a one-to-one ratio to economic damages, *see Sloan v. 1st Am. Auto. Sales Training*, No. 2:16-cv-5341, 2017 WL 1395479, at *3 (C.D. Cal. Apr. 17, 2017), and assume attorneys' fees equal to 25% of economic damages, *see Heejin Lim v. Helio, LLC*, No. 11-cv-9183, 2012 WL 359304, at *3 (C.D. Cal. Feb. 2, 2012).

32. For the above reasons, CAFA provides jurisdiction over this case.

## V. CONCLUSION

Pursuant to 28 U.S.C. §§ 1441, 1446, and 1453, Defendants hereby remove the above-captioned matter to the United States District Court for the Central District of California.

Dated: June 19, 2018             MANATT, PHELPS & PHILLIPS, LLP


By: /s/ John M. LeBlanc
    John M. LeBlanc
    *Attorneys for Defendants*

320525182.1

8                                                    NOTICE OF REMOVAL