# EXHIBIT A

# ORIGINAL

**FILED**
Superior Court of California
County of Los Angeles

MAY 04 2018

Sherri R. Carter, Executive Officer/Clerk
By _____, Deputy
Rita Nazaryan

1  **CALLAHAN & BLAINE, APLC**
   Daniel J. Callahan (Bar No. 91490)
2  Edward Susolik (Bar No. 151081)
   Richard T. Collins (Bar No. 166577)
3  Damon D. Eisenbrey (Bar No. 215927)
   3 Hutton Centre Drive, Ninth Floor
4  Santa Ana, California 92707
   Telephone: (714) 241-4444
5  Facsimile: (714) 241-4445

6  Attorneys for Plaintiffs KATHLEEN STEINLEY, MARTIN
   HAROLD STEINLEY, and MARTIN ALEXANDER STEINLEY,
7  individually and on behalf of others similarly situated

8              SUPERIOR COURT OF CALIFORNIA

9                 COUNTY OF LOS ANGELES

10

11  KATHLEEN STEINLEY,                    CASE NO. **BC 7 0 2 2 9 7**
    MARTIN HAROLD STEINLEY, and
12  MARTIN ALEXANDER STEINLEY,
    individually and on behalf of others similarly
13  situated,                             COMPLAINT

14              Plaintiffs,

15       v.

16  HEALTH NET, INC., a Delaware
    corporation,
17  HEALTH NET LIFE INSURANCE            Complaint Filed:
    COMPANY, a California corporation,   Trial Date:
18  HEALTH NET OF CALIFORNIA, INC., a
    California corporation,
19  MANAGED HEALTH NETWORK, INC., a
    Delaware corporation,
20  CENTENE CORPORATION, a Delaware
    corporation, and
21  DOES 1 through 100, inclusive,

22              Defendants.

23

24

25

26

27

28

                        COMPLAINT

LEA/DEF#:   BC702297

RECEIPT #: CCH47746i010
DATE PAID: 05/04/18   12:43 PM
PAYMENT:   $1,435.00
RECEIVED:              310
    CHECK:            $1,435.00
    CASH:                $0.00
    CHANGE:              $0.00
    CARD:                $0.00



05/04/2018

Plaintiffs KATHLEEN STEINLEY, MARTIN HAROLD STEINLEY, and MARTIN ALEXANDER STEINLEY bring this action on behalf of themselves individually, and on behalf of all others similarly situated ("Plaintiffs") against Defendants HEALTH NET, INC., a Delaware corporation, HEALTH NET LIFE INSURANCE COMPANY, a California corporation, HEALTH NET OF CALIFORNIA, INC., a California corporation, MANAGED HEALTH NETWORK, INC., a Delaware corporation, CENTENE CORPORATION, a Delaware corporation (collectively "Health Net"), and DOES 1 through 100, inclusive, and hereby allege the following on information and belief, except as to those allegations that pertain to the named Plaintiffs, which are alleged on personal knowledge:

## THE PARTIES

1.     Plaintiffs KATHLEEN STEINLEY ("Kathleen"), MARTIN HAROLD STEINLEY ("Martin"), and MARTIN ALEXANDER STEINLEY ("Alex") each are citizens of the State of California and reside in San Diego County.

2.     Defendant Health Net, Inc. ("HNI") is, and was at all times relevant to this action, a corporation duly organized and existing under the laws of the State of Delaware, with its principal place of business located in Woodland Hills, California.  HNI is authorized to conduct business as a health care service plan and health care insurer, and transacts, and is transacting, the business of providing health plans to consumers throughout California.

3.     Defendant Health Net Life Insurance Company ("HNLIC") is, and was at all times relevant to this action, a corporation duly organized and existing under the laws of the State of California, with its principal place of business located in Woodland Hills, California.  HNLIC is authorized to conduct business as a health care service plan and health care insurer, and transacts, and is transacting, the business of providing health plans to consumers throughout California.

4.     Defendant Health Net of California, Inc. ("HNCI") is, and was at all times relevant to this action, a corporation duly organized and existing under the laws of the State of California, with its principal place of business located in Woodland Hills, California.  HNCI is authorized to conduct business as a health care service plan and health care insurer, and transacts, and is transacting, the business of providing health plans to consumers throughout California.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 2 -
COMPLAINT

5.     Defendant Managed Health Network, Inc. ("MHNI") is, and was at all times relevant to this action, a corporation duly organized and existing under the laws of the State of Delaware, with its principal place of business located in Woodland Hills, California. MHNI is authorized to conduct business as a health care service plan and health care insurer, and transacts, and is transacting, the business of providing health plans to consumers throughout California.

6.     Defendant Centene Corporation ("Centene") is, and was at all times relevant to this action, a corporation duly organized and existing under the laws of the State of Delaware, with its principal place of business located in St. Louis, Missouri. Centene is authorized to conduct business as a health care service plan and health care insurer, and transacts, and is transacting, the business of providing health plans to consumers throughout California.

7.     Centene acquired HNI, HNCI, HNLIC, and MHNI through merger in 2015, which was approved by the California Department of Managed Health Care ("DMHC") and the California Department of Insurance ("CDI") in 2016, and is now the parent company or successor in interest of, and thereby liable for the acts and omissions of HNI, HNCI, HNLIC, and MHNI.

8.     Plaintiffs do not know the true names and capacities of defendants sued as DOES 1 through 100, inclusive, and therefore sue such defendants with such fictitious names. Plaintiffs will amend this complaint, if necessary, to allege their true names and capacities when they have been ascertained. Plaintiffs are informed and believe that each of the named and fictitiously named defendants are in some way involved in and responsible for the events, transactions, or occurrences alleged in the complaint, as well as the damages caused to Plaintiffs. DOES 1 through 100 are included in the references throughout this complaint to HNI, HNCI, HNLIC, MHNI, and Centene, as appropriate.

9.     Each of the defendants is, and was at all times relevant to this action, the agent, servant, representative, or alter ego of each of the other defendants, and in doing the things hereinafter alleged, each of the defendants was acting in the scope of its authority as such agent, servant, representative, or alter ego, and with the permission and consent of each of the other defendants.

10.    Each of the defendants formed and operated a conspiracy with each of the other

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 3 -
COMPLAINT

1  defendants to perform the acts alleged herein, in furtherance of a common design and with

2  knowledge that the conduct alleged herein of each of the defendants constituted breaches of duty

3  and provided substantial assistance or encouragement to each other to so act.

4      11.    Defendants HNI, HNCI, HNLIC, MHNI, Centene and DOES 1 through 100,

5  inclusive, and each of them, are collectively referred to herein as "Health Net," unless referred to

6  in their individual capacities.

7                    **JURISDICTION AND VENUE**

8      12.    This Court has jurisdiction over this action under Article VI, section 10 of the

9  California Constitution and section 410.10 of the Code of Civil Procedure.  Jurisdiction is also

10  proper under California Business and Professions Code section 17200, et seq. and California Civil

11  Code section 1750, et seq.

12      13.    This Court has jurisdiction over Health Net, as a resident of the State of California,

13  and because Health Net has purposely availed itself of the privilege of conducting business

14  activities in California and currently maintains systematic and continuous business contacts with

15  this State, with thousands of enrollees who are residents of this State and who do business with

16  Health Net.

17      14.    Venue is proper in this Court because, inter alia, Health Net's principle place of

18  business is in the County of Los Angeles, and because Health Net engages and performs business

19  activities in the County of Los Angeles, and has received substantial profits from consumers who

20  reside in the County of Los Angeles.

21                    **STATUTORY MANDATES**

22      15.    Enacted in March 2010, the Patient Protection and Affordable Care Act ("ACA")

23  created new rules applicable to health plans in the United States (PL 111-148, March 23, 2010,

24  124 Stat 119).  Under the ACA, states may operate a marketplace, known as an exchange, through

25  which private health plans are sold to consumers (42 U.S.C. § 18031(b)).

26      16.    Individuals could purchase health plans through their state's exchange during the

27  initial six-month 2014 Open Enrollment Period, between October 1, 2013 and March 31, 2014 (45

28  C.F.R. § 155.410).  Individuals could also purchase health plans directly from health plans during

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 4 -
COMPLAINT

1  the 2014 Open Enrollment Period. After the 2014 Open Enrollment Period, individuals could not

2  purchase health plans until the next enrollment period, beginning November 15, 2014 (45 C.F.R §

3  155.410(e)).

4       17.     The ACA expressly preserves state laws that offer additional consumer protections

5  that do not "prevent the application" of any ACA requirement (42 U.S.C. § 18041(d)). State laws

6  that impose stricter requirements on health plan issuers than those imposed by the ACA are also

7  not superseded by the ACA.

8       18.     To further the goals of ensuring that consumers are educated and informed about

9  the coverage and benefits and enabling consumer choice in the market place, regulations

10 promulgated pursuant to the Insurance Code require that advertisements for health plans "shall be

11 truthful and not misleading in fact or in implication." Cal. Code Regs. Title 10 ["10 CCR"] §

12 2536.1(b).

13      19.     Insurance Code sections 10603 and 10604 require health plans to "provide, in

14 easily understood language and in a uniform, clearly organized manner" information including the

15 "principal benefits and coverage of the disability insurance policy" and the "exceptions,

16 reductions, and limitations that apply to such policy."

17      20.     Insurance Code section 10133.5 requires "that insureds have opportunity to access

18 needed health care services in a timely manner" … "to assure accessibility of provider services in

19 a timely manner to individuals … pursuant to benefits covered under the policy or contract." Id. at

20 subds. (a) and (b). The purpose of the statute is to ensure, among other things, that:

21      a.     "The policy or contract is not inconsistent with standards of good health

22 care and clinically appropriate care." Ins. Code § 10133.5(b)(3).

23      b.     "All contracts including contracts with providers, and other persons

24 furnishing services, or facilities shall be fair and reasonable." Ins. Code § 10133.5(b)(4).

25      21.     Regulations promulgated pursuant to Insurance Code section 10133.5 require that

26 "insurers shall ensure that … [n]etwork providers are duly licensed or accredited and that they are

27 sufficient, in number or size, to be capable of furnishing the health care services covered by the

28 insurance contract, taking into account the number of covered persons, their characteristics and

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 5 -
COMPLAINT

1    medical needs including the frequency of accessing needed medical care within the prescribed

2    geographic distances outlined herein and the projected demand for services by type of services."

3    10 CCR § 2240.1(b)(1).

4        22.    Insurance Code section 10133.56 similarly allows consumers who are in the course

5    of treatment to continue to receive treatment from their provider of choice, even after the health

6    insurer terminates its contract with the provider.

7                    **NATURE OF THE ACTION**

8        23.    Plaintiffs bring this action to challenge Health Net's deceptive and fraudulent

9    misrepresentations, its inadequate network of contracted providers of behavioral health and

10   substance use disorder services ("BH/SUD"), its grossly mishandled administration of PPO

11   Policies, its groundless investigation of BH/SUD claims and consequent elimination of out-of-

12   network choices, and its inequitable payment of benefits for BH/SUD services as compared to

13   medical and surgical services.

14       24.    In violation of California law, Health Net:

15           a.    Has misrepresented and continues to misrepresent to consumers that certain

16   BH/SUD providers are participating in Health Net's network of contracted providers, or in-

17   network providers, when in fact they are not;

18           b.    Has made and continues to make false and misleading representations and

19   omissions in advertising, marketing, and communications regarding BH/SUD provider networks

20   and as to other matters as more fully described herein;

21           c.    Has subjected and continues to subject Plaintiffs and others similarly

22   situated to inadequate networks of BH/SUD providers, causing delays and interruptions in

23   accessing needed health care;

24           d.    Has subjected and continues to subject Plaintiffs and others similarly

25   situated to exceedingly long wait times, regularly lasting several hours and in some cases, like

26   Plaintiffs', days and weeks on customer service telephone lines when calling to address these

27   problems and misrepresentations;

28           e.    Has and subjected continues to subject Plaintiffs and others similarly

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 6 -
COMPLAINT

1   situated to unreasonably limited, almost non-existent, choices of out-of-network BH/SUD

2   providers as a direct result of Health Net's groundless, industry-wide dragnet SIU investigation of

3   out-of-network BH/SUD providers; and

4           f.      Has subjected and continues to subject Plaintiffs and others similarly

5   situated to exorbitant increased costs of health care as a direct result of Health Net's practice of

6   reimbursing BH/SUD services at Medicare allowable rates that do not apply to the BH/SUD

7   services provided, resulting in an underpayment on average of approximately 70-80% of the

8   providers' billed charges and a resulting increase in Plaintiffs' out of pocket expenses for covered

9   health care services.

10          25.     In late 2013, to coincide with the commencement of the ACA, Health Net canceled

11   its existing non-ACA-compliant PPO Policies and made available to California consumers new

12   PPO Policies, effective January 1, 2014.

13          26.     The new ACA-compliant PPO Policies were first made available to consumers

14   during a designated enrollment period between October 1, 2013 and March 31, 2014 (the "2014

15   Open Enrollment Period").  Except for a few narrow exceptions, consumers may only enroll in

16   new coverage or switch coverage during designated open enrollment periods.

17          27.     Health Net represented and marketed to consumers that its health plans have

18   specific BH/SUD providers under contract and within its network of providers available to those

19   consumers enrolled in the Health Net PPO Policies.

20          28.     After Plaintiffs and those similarly situated enrolled in the new Health Net PPO

21   Policies, they discovered that their provider networks did not include the BH/SUD providers

22   Health Net had represented to be in-network providers, and that those provider networks were

23   much more limited than previously represented by Health Net.  Due to Health Net's deceptive and

24   fraudulent actions and misrepresentations, Plaintiffs and those similarly situated are not able to

25   fully access the benefits of the plans they purchased.

26          29.     Plaintiffs and those similarly situated did not become fully aware of the reduced

27   provider networks until after the close of their respective open enrollment periods, thereby locking

28   them in those plans until the next open enrollment period.  Some consumers have not yet become

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 7 -
COMPLAINT

1    aware of the reduced provider networks.

2        30.    Health Net had a clear incentive to conceal its networks: As a result of these

3    practices, Health Net significantly increased its share of the California health plan market, while

4    offering inferior products and not paying the contractually and statutorily mandated benefits.

5        31.    Health Net's practices improperly shift the increased cost of health care onto

6    Plaintiffs and those similarly situated in the form of exorbitant unpaid bills and the transformation

7    of fixed co-payments into percentage-based co-insurance obligations if they cannot access in-

8    network providers in a timely manner from the limited number of in-network providers in Health

9    Net's provider network.

10       32.    By selling health plans that do not provide benefits or access to BH/SUD in-

11   network providers as advertised, Health Net's deceptive business practices resulted in mass

12   confusion, with Plaintiffs and others similarly situated trapped in a labyrinth of automated phone

13   trees, multiple transfers, oppressive hold times, disconnections, and restarting the entire process.

14       33.    Health Net's deceptive and fraudulent practices went beyond providing an

15   inadequate network of BH/SUD providers. In January 2016, Health Net instituted an industry-

16   wide dragnet SIU investigation of out-of-network providers of BH/SUD services. The SIU

17   investigation was intended to avoid the payment of out-of-network provider BH/SUD services,

18   and Health Net has in large part avoided such contractually and statutorily mandated payments.

19   As a direct consequence, Plaintiffs and others similarly situated found themselves unable to find

20   BH/SUD out-of-network providers willing to treat Health Net insureds.

21       34.    For those of Health Net's insureds, such as Plaintiffs and others similarly situated,

22   who were able to find out-of-network BH/SUD providers willing to provide treatment, Health Net

23   further compounded the injury and damages by employing a deceptive and fraudulent practice of

24   reimbursing out-of-network BH/SUD services at Medicare reimbursement rates that do not apply

25   to the BH/SUD services provided, resulting in average underpayments of approximately 70-80%

26   of the out-of-network providers' billed charges, and a resulting increase in Plaintiffs' out of pocket

27   expenses for covered health care services.

28       35.    The inapplicable Medicare reimbursement rates applied by Health Net were only

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 8 -
COMPLAINT

1   misapplied to BH/SUD treatment services, not medical and surgical services, and therefore violate

2   the Mental Health Parity and Addiction Equity Act of 2008 ("MHPAEA"), made applicable to

3   health insurance companies in the State of California pursuant to California Insurance Code section

4   10112.27.

5        36.     Plaintiffs bring this action on behalf of themselves and on behalf of a class of

6   current California residents who are enrolled in, or who were enrolled in, a Health Net PPO health

7   insurance contract, purchased on or after October 1, 2013 (collectively, the "Class," or

8   individually, "Class Members").

9        37.     Health Net's deceptive and fraudulent practices of representing and advertising that

10   its health plans have certain providers in the plans' networks when those providers are not actually

11   in the plans' networks violates California Insurance Code provisions, as well as the Unfair

12   Competition Law ("UPL"), California Business and Professions Code sections 17200, et seq., and

13   the Consumers Legal Remedies Act ("CLRA"), California Civil Code sections 1750, et seq.

14       38.     Through its conduct as described herein, Health Net has breached the individual

15   PPO contracts entered into with Plaintiffs and the Class Members and breached the implied

16   covenant of good faith and fair dealing in each of those PPO contracts.

17       39.     Plaintiffs seek to recover damages resulting from Health Net's breach of contract

18   and breach of the implied covenant of good faith and fair dealing; an order of this Court enjoining

19   Health Net's continued violations; an order for restitution of all monies paid for Health Net PPO

20   Policies in an amount reflecting the difference in the value of the PPO Policies with the providers

21   as misrepresented at any time since October 1, 2013, and the value of the PPO Policies with the

22   actual reduced provider networks, and other remedies as set forth herein.

**FACTUAL ALLEGATIONS**

24       40.     On November 4, 2015, Martin completed a Health Net Small Business Application

25   for Group Enrollment, choosing the Health Net Gold 80 PPO policy (the "Policy"), to be effective

26   December 1, 2015.

27       41.     On the enrollment application for the Policy, Martin included as family members to

28   be insured under the Policy, his wife, Kathleen, their son, Alex, and their other two sons.

- 9 -
COMPLAINT

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

42.   In selecting the Health Net PPO Policy, Plaintiffs were relying upon representations made by Health Net concerning access to an adequate network of providers of health care services, including BH/SUD providers.

43.   On Tuesday, May 3, 2016, Alex was transported by American Medical Response West to Santa Barbara Cottage Hospital, where he was admitted for psychiatric evaluation.

44.   Alex was then transferred to Aurora Vista del Mar Hospital, an acute psychiatric facility in Ventura County.

45.   Kathleen and Martin were advised that they would need to find a BH/SUD residential treatment center where Aurora Vista del Mar Hospital could discharge Alex following his hospitalization.

46.   Kathleen began her search in earnest for a BH/SUD residential treatment facility that had contracted with Health Net to be included within the Health Net network of providers, as represented in Health Net's advertisements, marketing materials and in its directory available through the Health Net website portal.

47.   Kathleen traveled from San Diego County to Santa Barbara County, where Alex was originally admitted to Cottage Hospital and which was proximately located to Aurora Vista del Mar Hospital.  She checked into a hotel room and tirelessly researched facilities, placed phone calls to facilities, and tried desperately to complete the intake and application process only to be turned away each and every time.

48.   Kathleen contacted Plaintiffs' insurance broker, David Archambault for help. Mr. Archambault's office provided Kathleen with instructions for how to access the Health Net website portal for online access to the Provider Directory, found at www.healthnet.com, but warned Kathleen that Health Net's website is hard to navigate.

49.   Kathleen accessed the Health Net online directory and immediately experienced difficulty with her search for BH/SUD in-network providers.  None of the facilities listed in Kathleen's search results were BH/SUD residential treatment facilities and the search feature for in-network providers was limited to within 30 miles of Plaintiffs' home in San Diego County, despite the fact that Alex was hospitalized in Ventura County.  Kathleen again contacted Mr.

- 10 -

COMPLAINT

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1  Archambault and advised him of her difficulty locating a Health Net BH/SUD in-network

2  provider.

3      50.    With the help of Mr. Archambault, Kathleen was able to navigate the online Health

4  Net Provider Directory.  However, she quickly found that there was no available BH/SUD in-

5  network provider *able* to treat Alex.  Just as quickly, Kathleen also found that BH/SUD out-of-

6  network providers were *not willing* to treat a Health Net insured because Health Net had initiated a

7  dragnet SIU investigation to cut off reimbursement of BH/SUD out-of-network providers.

8      51.    As of Friday May 6, 2016, after days of constant searching and calling BH/SUD

9  residential treatment facilities, Plaintiffs were told by in-network providers that they either did not

10  provide the BH/SUD services Alex needed, did not have an available bed for Alex, or that they

11  would not agree to treat Alex because he was already admitted at an equivalent level of care

12  facility.  Plaintiffs were told by out-of-network providers that, although they had space available

13  and provided the services Alex needed, they could no longer admit and treat Health Net insureds

14  because Health Net refuses to reimburse BH/SUD out-of-network providers for services rendered.

15      52.    Kathleen reported back to Mr. Archambault about her efforts to locate a residential

16  treatment facility that would accept Alex.  Kathleen advised Mr. Archambault that time was of the

17  essence; that Alex would be at risk of dying if she and Martin could not find a residential

18  treatment facility that would agree to admit Alex before Alex was scheduled to be discharged from

19  Aurora Vista del Mar on Monday, March 9, 2016.

20      53.    On May 6, 2016, Mr. Archambault reported back to Kathleen that he had left a

21  message and had sent an e-mail to Health Net, asking for help and direction for a behavioral health

22  care coordinator.

23      54.    That same evening on May 6, 2016, Kathleen sent an e-mail to Mr. Archambault,

24  advising him of her research into Health Net and her efforts to find out why out-of-network

25  BH/SUD residential treatment facilities would no longer treat Health Net insureds.  Kathleen

26  explained that she had spent the entire day researching treatment facilities, following leads,

27  contacting facilities, only to then be turned away because Plaintiffs' insurance was through Health

28  Net.  In her research to determine why facilities would not treat Health Net insureds, Kathleen

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 11 -
COMPLAINT

1  found an online article that explained how Health Net had instituted an industry-wide dragnet

2  investigation of alleged fraud in the BH/SUD treatment industry.  Health Net was aggressively

3  pursuing its allegations of fraud against out-of-network BH/SUD residential treatment facilities

4  and refusing to pay those facilities during the investigation.

5       55.     On Saturday, May 7, 2016, Martin contacted Health Net and demanded that they

6  provide a list of in-network BH/SUD residential treatment facilities.  He was provided a list of in-

7  network providers and Kathleen began contacting each one.  Every one of the in-network

8  providers on the list provided by Health Net were rehabilitation hospitals for treatment of strokes,

9  traumatic brain injury and other physical rehabilitation services.  None of the providers on the list

10  from Health Net were BH/SUD providers.

11       56.     Kathleen then contacted an organization that seeks to place patients in residential

12  treatment centers across the country, but was advised that most of the out-of-network BH/SUD

13  providers across the country were no longer accepting Health Net patients.

14       57.     Kathleen reported back to Mr. Archambault on May 7, 2016, that it appeared

15  Health Net was not able to provide an adequate network of BH/SUD providers that Plaintiffs had

16  contracted for, and she inquired of Mr. Archambault whether it would be possible to switch to

17  another health insurance plan so that Alex could get the treatment he needed.

18       58.     Kathleen and Martin also discussed amongst themselves the difficulty to first locate

19  an in-network provider and then the difficulties locating an out-of-network provider willing to

20  treat a Health Net insured.  They felt as though they needed to consider different options so that

21  Alex could get the treatment he needed, but one option they were not willing to consider was

22  depriving Alex of the treatment he needed and risk death just because Health Net was not

23  providing the services they contracted for.

24       59.     Later that evening on May 7, 2016, Martin sent an e-mail to Health Net, explaining

25  that he had previously requested a list of all in-network BH/SUD residential treatment facilities

26  who could provide treatment to Alex for his BH/SUD, and how the list Health Net provided him

27  was completely useless.  Martin also advised Health Net that the out-of-network providers were all

28  unwilling to treat Health Net insureds.

CALLAHAN & BLAINE<br>A PROFESSIONAL LAW CORPORATION<br>3 HUTTON CENTRE DRIVE, NINTH FLOOR<br>SANTA ANA, CALIFORNIA 92707<br>TELEPHONE: (714) 241-4444<br>WWW.CALLAHAN-LAW.COM

- 12 -
COMPLAINT

60. On Sunday, May 8, 2016, Mr. Archambault was able to answer Martin and Kathleen's question about possibly changing insurance so that Alex could get the treatment he needed. Unfortunately, due to restrictions upon open enrollment periods, Mr. Archambault reported that Plaintiffs would not be able to change their insurance plan until June 1, 2016, weeks after Alex would need to be admitted to a residential treatment facility.

61. On the night of May 8, 2016, Kathleen sent an e-mail to Mr. Archambault, again asking for his help in obtaining a list of in-network providers from Health Net so that she could begin calling facilities again prior to Alex' scheduled discharge from Aurora Vista del Mar the following day. Martin sent a similar e-mail to Mr. Archambault in the early morning hours of Monday, May 9, 2016. Kathleen and Martin were desperately searching for an in-network provider *able* to treat Alex or an out-of-network provider *willing* to treat a Health Net insured before it was too late for Alex.

62. Mr. Archambault could not gain any further assistance form Health Net or provide any answers to the many questions of why it seemed like no provider would treat a Health Net insured. However, Mr. Archambault did gain the assistance of a behavioral health case manager to assist in their search for a residential treatment facility. However, they still were unable to find an available residential treatment facility.

63. Mr. Archambault had forwarded Kathleen's May 6, 2016, e-mail that same day to Ruth Haskins of Health Net, with a copy of the e-mail sent to Cindy James of Health Net. Mr. Archambault asked Ms. Haskins how it was that he was receiving complaints like this from his clients. Mr. Archambault explained that Kathleen was looking for a BH/SUD residential treatment facility for Alex and admitted that he was unable to assist her. He asked Ms. Haskins if there was a case manager or coordinator who could assist. He also asked Ms. Haskins if Health Net stopped contracting with BH/SUD providers or stopped paying out-of-network BH/SUD providers.

64. Ms. Haskins responded to Mr. Archambault three days later, on May 9, 2016, advising that she had reached out to Account Services and determined that, since Plaintiffs were still searching for a provider and not already under the care of a provider, that there was no one at

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 13 -
COMPLAINT

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

1    Health Net that would assist them. Ms. Haskins advised Mr. Archambault of her communications

2    with Sharp Mesa Vista and UCSD and, promised to advise of any further information she was

3    able to gain.

4         65.    Mr. Archambault provided Martin with a copy of Ms. Haskins' e-mail, and Martin

5    replied to Ms. Haskins by e-mail on May 9, 2016.  He explained that the information Ms. Haskins

6    provided was useless, since Kathleen had already contacted Scripps Mesa Vista and UCSD and

7    had learned that they do not provide BH/SUD residential treatment.  Martin further explained that

8    they had switched their health care coverage to Health Net at the end of 2015 and that they were

9    paying approximately $2,500 per month for coverage in reliance upon Health Net's

10   representations as to its provider networks, and that now that they need that insurance coverage,

11   they are finding that there are no in-network providers available and all out-of-network providers

12   had stopped treating Health Net insureds because of Health Net's refusal to reimburse the

13   providers.  Martin provided Ms. Haskins with his telephone number and asked that she contact

14   him as soon as possible.

15        66.    In the late afternoon of May 9, 2016, Martin sent an e-mail to Mr. Archambault,

16   advising that Ms. Haskins had not called back, nor had anyone at Health Net called, despite his

17   numerous calls and messages.  He explained that Alex had been discharged and that they were in a

18   desperate situation.

19        67.    On the night of May 9, 2016, Kathleen sent an e-mail to Mr. Archambault, in which

20   she describes a realization that their inability to find an in-network provider *able* to treat Alex or

21   an out-of-network provider *willing* to treat a Health Net insured was most likely the result of a

22   fraudulent scheme by Health Net.  Kathleen explained that she came to understand that Health Net

23   wanted to appear more profitable for its merger with Centene and that Health Net decided to stop

24   paying claims submitted by BH/SUD providers.  She opined that Health Net likely calculated that

25   it would be less expensive and easier to not pay for services to treat drug addicts and the mentally

26   ill, since Health Net likely figured they are less sympathetic and less able to able to fight for the

27   rights provided under the PPO Policies.

28        68.    Mr. Archambault responded to Kathleen the following morning on May 10, 2016.

- 14 -
COMPLAINT

He acknowledged Kathleen and Martin's frustration with their unsuccessful search for a treatment

provider, and he expressed his own frustration with Ms. Haskins of Health Net not responding to

Martin after she promised to do so. Mr. Archambault also mentioned that he reached out to a

friend of his who was a vice president of sales for Health Net to see if he could gain some

assistance. Mr. Archambault even acknowledged that he had lost some respect for Health Net.

69.     Kathleen, working any and all angles to find a facility able and willing to treat

Alex, resorted to contacting numerous organizations that seek to place patients with residential

treatment facilities. Two such organizations she worked with, were able to find two residential

facilities willing and able to admit Alex, other providers declared that no out-of-network provider

in the country would treat a Health Net insured since Health Net's SIU investigation and cessation

of reimbursement payents.

70.     On May 12, 2016, Kathleen was able to fill out the necessary admission and

financial responsibility paperwork for The Canyon at Peace Park in Malibu, an out-of-network

provider that was willing to accept Alex despite being a Health Net insured.

71.     On May 13, 2016, Mr. Archambault spoke with Christina Diamantis of Health Net

and explained the impossible situation Plaintiffs were in and their unreasonably difficult efforts to

locate a treatment facility for Alex. Mr. Archambault followed up his phone call by sending

Kathleen's May 6, 2016, e-mail to Ms. Diamantis, which set forth the reports of Health Net's

industry-wide dragnet SIU investigation and Health Net's refusal to reimburse out-of-network

BH/SUD treatment providers.

72.     After Alex was finally placed at The Canyon, Health Net persisted in its bad faith

and fraudulent conduct by reimbursing Plaintiffs' claims for Alex's treatment at a rate for out-of-

network providers, instead of complying with Title 10 of the California Code of Regulations

sections 2240 et seq. that precludes an insurer like Health Net from forcing the insured to bear any

increased cost for the health care services rendered by out-of-network providers when the insured

is forced out-of-network due to a network inadequacy.

73.     To cause further injury and damage to Plaintiffs, Health Net reimbursed Plaintiffs

for the expenses incurred at The Canyon using Medicare reimbursement rates that do not apply to

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 15 -

COMPLAINT

1   the services rendered, resulting in an underpayment of The Canyon's billed charges and a resulting

2   increase in Plaintiffs' out of pocket expenses for the medically necessary, covered health care

3   services.

4        74.     The inapplicable Medicare reimbursement rates applied by Health Net were only

5   misapplied to BH/SUD treatment services, not medical and surgical services, and therefore violate

6   the MHPAEA and California Insurance Code section 10112.27.

7                             **HEALTH NET'S WRONGFUL CONDUCT**

8        75.     Health Net's website has at all relevant times offered a feature that allows potential

9   enrollees to search Health Net's provider networks, and Health Net also allows enrollees to obtain

10   provider network information over the phone. In addition, Health Net included representations

11   concerning its provider networks in its marketing, sales, and plan informational materials.

12        76.     In an effort to increase its share of the California health plan market, Health Net

13   engaged in a fraudulent and deceptive marketing scheme leading up to and during the 2014 Open

14   Enrollment Period and thereafter, by misrepresenting its provider networks during the open

15   enrollment periods in order to increase sales of its health plans and concealing that its networks

16   were significantly more limited than its networks prior to the 2014 Open Enrollment Period.

17        77.     Health Net has and maintains an inadequate network of BH/SUD treatment

18   providers while our nation is gripping with a raging epidemic of substance use disorders.

19        78.     Drug overdoses have become the leading cause of death of Americans under 50,

20   with two-thirds of those deaths from opioids.

21        79.     From 1999 to 2015, 568,699 persons died from drug overdoses in the United

22   States.

23        80.     Drug overdose deaths in the United States increased 11.4%, from 2014 to 2015,

24   resulting in 52,404 deaths in 2015, including 33,091 (63.1%) that involved an opioid.

25        81.     In 2016, there were 63,632 drug overdose deaths in the United States. Opioids

26   accounted for 66.4% (42,249) of the deaths, with increases across age groups, racial/ethnic groups,

27   urbanization levels, and multiple states.

28        82.     On average, 115 Americans die every day from an opioid overdose. Drug

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 16 -
COMPLAINT

1    overdoses now cause more deaths than either car accidents or guns.

2        83.    The opioid crisis has destroyed lives and devastated families. It is the deadliest

3    drug crisis in United States history and it is only getting worse. In 2016 alone, California lost

4    1,925 lives to the opioid epidemic.

5        84.    In light of this epidemic, between 2014 and 2016, hundreds of out-of-network

6    BH/SUD providers treated thousands of patients who had PPO policies provided by Health Net,

7    after verification of benefits by, and prior authorization from, Health Net.

8        85.    The Health Net PPO policies covering these patients, like Alex, required

9    reimbursement at 75% of the covered charge billed by the provider. Up until January 2016,

10   Health Net had reimbursed out-of-network BH/SUD providers at 75% of their billed charges.

11   That stopped, and in fact, all payments stopped for out-of-network BH/SUD services when Health

12   Net instituted its groundless dragnet SIU investigation.

13       86.    Health Net wrote the language in its PPO Policy that requires reimbursement at

14   75% of billed charges because it wanted to increase its membership and premium dollars after

15   implementation of the ACA, but when it came time to pay claims under those PPO policies,

16   Health Net refused to honor its obligations because Health Net wanted to show a greater net value

17   increase its sales price for an anticipated acquisition by Centene that was completed in March

18   2016.

19       87.    Health Net had explored the market for a suitor for two years before its 2016

20   merger with Centene. Health Net CEO Jay Gellert and Centene CEO Michael Neidorff first met

21   in November 2014, to discuss a potential merger, but did not initiate negotiations. Health Net

22   apparently spoke with two other interested buyers in the beginning of 2015, but those negotiations

23   stalled.

24       88.    In May 2015, Health Net reported its first-quarter profits had edged slightly

25   upward. More notable was Health Net's swelling membership, the result of the ACA and a

26   generous policy form that provided reimbursement levels greater than its competitors. Individual

27   membership climbed 74% to 360,000. Health Net's first-quarter revenue jumped 28% to $3.9

28   billion. Net income increased 4% to $30 million, equaling a 0.8% profit margin.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 17 -

COMPLAINT

89.   After the positive financial report, Centene returned to Health Net and negotiations began in earnest in June 2015.  On July 2, 2015, Health Net announced that it had entered into a merger agreement with Centene under which Centene would acquire all of the issued and outstanding shares of Health Net. In October 2015, Health Net's stockholders voted to approve the adoption of the merger agreement with Centene.  When the deal was finalized, it was valued at $6.8 billion.  Health Net's CEO received a golden parachute worth $54 million and the CFO received a golden parachute of $23.4 million.

90.   In January 2016, Health Net abruptly stopped paying out-of-network BH/SUD claims.  Health Net sent a letter to numerous out-of-network BH/SUD treatment facilities in California, outlining a "number of potential concerns" about "false and/or fraudulent claims," followed by more letters in February and March to out-of-network BH/SUD facilities and to patients, requesting proof that the providers had collected the patient's deductibles, co-pays or co-insurance.

91.   By March 2016, Health Net had developed a scheme to underpay the out-of-network BH/SUD claims by implementing institutional policies and procedures that instructed its claims personnel to refer out-of-network BH/SUD claims for special handling and, if cleared for payment, to not pay out-of-network BH/SUD claims at 75% of billed charges, as required by the Policy, and to instead use the inapplicable Medicare reimbursement rate.

92.   In July 2016, Centene was forced to disclose to its shareholders that Health Net had incurred *$390 million* in liabilities for out-of-network BH/SUD claims, which existed as of the March 24, 2016 merger date, but had not been properly accounted for and disclosed.  The increased liabilities were greater than Health Net's entire pre-tax annual earnings in recent years, making clear that Health Net's earnings had been vastly overstated.  Centene was forced to record these increased liabilities in filings with the U.S. Securities and Exchange Commission, and Health Net's revenue and income were both reduced drastically, prompting Centene to request premium increases and benefit design changes, including reductions in reimbursement for out-of-network BH/SUD services.

93.   Centene and Health Net worked feverishly to control the bad publicity.  On July 26,

- 18 -
COMPLAINT

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1    2016, for instance, during an analyst call, Centene CFO Jeffrey Schwaenke, discussing losses from

2    Health Net-related out-of-network BH/SUD claims in California said, "[w]e have taken steps to

3    mitigate the substance abuse treatment center cost in the individual commercial business in

4    California including modifications to plan design," and that Centene was "actively working" to

5    "ensure we maintain a competitive individual commercial product in 2017."

6         94.    Centene CEO Michael Neidorff added in that same analyst call that Centene was

7    "being very aggressive in fixing it." He explained further that Centene was "working with the

8    state at the highest levels to redesign the PPO product. There were major flaws in it, and we

9    corrected that." Later, he reiterated that, "the behavioral issue is being dealt with with [sic] the

10   benefit designs." Mr. Neidorff explained that the Health Net PPO plans had "product design

11   issues," but insisted, "[w]e're closing – I don't want to call it loopholes – some openings."

12        95.    On July 28, 2016, appearance on the CNBC show, "Mad Money," Mr. Neidorff

13   responded to a question regarding losses in Health Net's California business by stating, "we have

14   an issue there … that the individual PPO had a bad product design."

15        96.    Further, during another analyst call on October 23, 2016, Mr. Neidorff returned to

16   the issue of the design flaws in Health Net's PPO Policy and Centene's efforts to fix them. He

17   detailed some of the key changes, including "the first time inclusion of an out-of-network

18   deductible for platinum and gold plans," a "significant increase in the out-of-network maximum

19   out-of-pocket level," the "elimination of non-emergent out-of-state coverage and travel network

20   access," the "elimination of the default rate of 75% of billed charges to out-of-network services

21   that do not have a Medicare rate," and "restrictions on third-party premium payments, which were

22   not included in the original 2016 offering."

23        97.    Speaking further about Health Net's PPO plan prior to 2017, Mr. Neidorff said,

24   "when you look at … the out-of-network coverage, the benefit design they had before without the

25   Medicare Maximum and the other issues where there was a percent of billed charges, basically

26   out-of-network providers could do what they wanted and we are liable at a time for 75% of billed

27   charges 'til they change their certificate of coverage."

28        98.    In addition, at the Morgan Stanley Global Health Care Conference on September

- 19 -

COMPLAINT

13, 2016, Mr. Neidorff stated that Centene had "dealt with" its losses and liabilities for Health Net out-of-network BH/SUD claims in California by "chang[ing] the benefit level," and said it was working to "fix the PPO in California." He added, "[t]here were some design flaws that were just so obvious to those of us who have been doing it for a long time. Those have been fixed." Mr. Neidorff went on to explain some of the "design flaws" in the Health Net PPO Policy that had led to its liability for out-of-network BH/SUD claims in California:

> There were not the incentives. A PPO is designed to give people an option to go out of network, but really it should be designed to encourage people to stay in network. This had none of that. There were no caps on maximum allowances. We had the most liberal – or Health Net had the most liberal PPO out there, which encouraged adverse selection. ... But we knew we had the prior purchase accounting methodology to deal with it. And we knew what it would take to fix it. And that's just what we have been doing, very methodically. And we're very comfortable.

99.     Health Net knew it had a "bad product" that provided generous levels of reimbursement for out-of-network BH/SUD claims. By withholding payments to hundreds of facilities for thousands of claims worth tens of millions of dollars, beginning in January 2016, Health Net was able to contrive a reduction in liabilities that improved the overall equity of Health Net and its value to Centene pre-merger, thereby improving Health Net's sale price to Centene.

100.    Furthermore, Centene states in its financial disclosure, "if the accounting for the business combination is incomplete, provisional amounts are recorded ... up to one year from the acquisition date." In essence, by delaying, disputing and withholding payments to substance use treatment facilities, Centene was able to smooth out its profit over the four quarters post-merger. Health Net's SIU investigation in effect allowed Centene to prop up its profits until the out-of-network BH/SUD claims trapped in the audit are "resolved" in subsequent quarters.

101.    Health Net initiated an SIU audit as a pretext to allow Health Net to artificially depress its liabilities (the out-of-network BH/SUD claims), increase its pre-merger equity, and to allow Centene to spread the unaccounted for liabilities across the post-merger quarters.

102.    Health Net and Centene furthered this deceptive, fraudulent, bad faith scheme by substantially reducing the reimbursement for substance use treatment, in March 2016, when Health Net implemented its policies and procedures with instructions to not pay out-of-network

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 20 -
COMPLAINT

1  BH/SUD claims at 75% of billed charges, and to instead use an inapplicable Medicare

2  reimbursement rate.

3      103.    All of this was designed to increase the value of the merger and executive bonuses

4  at the expense of insured members in need of BH/SUD services and the providers of such services.

5      104.    At the Wells Fargo Securities Healthcare Conference, on September 7, 2016,

6  Centene's Vice President of Finance, Edmund E. Kroll, admitted that Health Net had wrongfully

7  denied many of the out-of-network BH/SUD claims:

8          [Health Net] denied a lot of claims that [Centene] determined should
           be on the books [because] ... they were owed.
9

10     105.    Through its conduct of misrepresenting provider networks, failing to maintain

11  adequate provider networks, initiating a groundless dragnet SIU investigation and refusal to

12  reimburse out-of-network BH/SUD claims to unduly restrict the availability of out-of-network

13  providers, and reimbursing out-of-network BH/SUD claims with an inapplicable Medicare

14  reimbursement rate in contravention of the express Policy terms, Health Net violated the

15  California Insurance Code and implementing regulations, the MHPAEA, the UCL and the CLRA.

16                                **CLASS ALLEGATIONS**

17     106.    This action is brought on behalf of Plaintiffs individually and on behalf of all others

18  similarly situated pursuant to Code of Civil Procedure section 382 and Civil Code section 1781.

19  Plaintiffs seek to represent the following class:

20          All California residents who purchased a Health Net PPO Policy on or after October 1,

21          2013.

22     107.    Plaintiffs reserve the right under Rule 3.765(b) of the California Rules of Court to

23  amend or modify the class description with greater specificity, by further division into subclasses

24  or by limitation to particular issues.

25     108.    The proposed Class is composed of thousands of persons dispersed throughout the

26  State of California and joinder is impractical.  The precise number and identity of Class Members

27  are unknown to Plaintiffs but can be obtained from Health Net's records.

28     109.    There are questions of law and fact common to members of the Class, which

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 21 -

COMPLAINT

1  predominate over questions affecting only individual Class Members.

2  110. Plaintiffs are members of the Class and Plaintiffs' claims are typical of the claims

3  of the Class.

4  111. Plaintiffs are willing and prepared to serve the Court and the proposed Class in a

5  representative capacity. Plaintiffs will fairly and adequately protect the interests of the Class and

6  have no interests adverse to or which conflict with the interests of the other members of the Class.

7  112. The self-interest of Plaintiffs is co-extensive with and not antagonistic to those of

8  absent Class members. Plaintiffs will undertake to represent and protect the interests of absent

9  Class members.

10  113. Plaintiffs have engaged the services of counsel indicated below who are

11  experienced in complex class litigation, will adequately prosecute this action, and will assert and

12  protect the rights of and otherwise represent Plaintiffs and absent Class Members.

13  114. The prosecution of separate actions by individual members of the Class would

14  create a risk of inconsistency and varying adjudications, establishing incompatible standards of

15  conduct for Health Net.

16  115. Health Net has acted on grounds generally applicable to the Class, thereby making

17  relief with respect to the members of the Class as a whole appropriate.

18  116. A class action is superior to other available means for the fair and efficient

19  adjudication of this controversy. Prosecution of the complaint as a class action will provide redress

20  for individual claims too small to support the expense of complex litigation and reduce the

21  possibility of repetitious litigation.

22  117. Plaintiffs do not anticipate any unusual or difficult management problems with the

23  pursuit of this Complaint as a class action.

24

25

26

27

28

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 22 -
COMPLAINT

## FIRST CAUSE OF ACTION

**Violations of Business & Professions Code Section 17200, et seq. – the UCL**

**As Against All Defendants**

118.    Plaintiffs incorporate by reference each of the preceding paragraphs as though fully set forth herein.

119.    The UCL prohibits acts of "unfair competition," which is defined by Business and Professions Code section 17200 as including "any unlawful, unfair or fraudulent business act or practice ...."

120.    Health Net's conduct, and the conduct of DOES 1 through 100, as described above, constitutes unlawful business acts and practices.

121.    Health Net and DOES 1 through 100 have violated and continue to violate the UCL's prohibition against engaging in "unlawful" business acts or practices, by, inter alia, violating provisions of the California Insurance Code and implementing regulations, the MHPAEA, and the CLRA by the conduct alleged herein, including but not limited to:

a.    By misrepresenting the providers that would be in-network under Plaintiffs' and Class Members' PPO Policies, Health Net's advertisements are not "truthful" and are "misleading in fact or in implication" in violation of 10 CCR § 2536.1(b).

b.    By misrepresenting the providers that would be in-network under Plaintiffs' and Class Members' PPO Policies and by misrepresenting the size of the available provider networks, Health Net is failing to "provide, in easily understood language and in a uniform, clearly organized manner" information about the PPO Policies, including the "principal benefits and coverage of the disability insurance policy" and the "exceptions, reductions, and limitations that apply to such policy" in violation of Insurance Code sections 10603(a)(1) and 10604(a).

c.    By misrepresenting the providers that would be in-network under Plaintiffs' and Class Members' PPO Policies, Health Net's Policies are not "fair and reasonable" and "inconsistent with standards of good health care and clinically appropriate care" in violation of Insurance Code section 10133.5.

d.    By misrepresenting the providers that would be in-network under Plaintiffs'

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 23 -
COMPLAINT

1  and Class Members' PPO Policies, Health Net has failed to "ensure that … [n]etwork providers

2  are duly licensed or accredited and that they are sufficient, in number or size, to be capable of

3  furnishing the health care services covered by the insurance contract, taking into account the

4  number of covered persons, their characteristics and medical needs including the frequency of

5  accessing needed medical care within the prescribed geographic distances outlined herein and the

6  projected demand for services by type of services" in violation of 10 CCR § 2240.1(b)(1).

7         e.     By refusing to provide continuity of care with a patient's physician for an

8  acute condition, serious chronic condition, pregnancy, terminal illness, a newborn child, or

9  performance of surgery to consumers during their course of treatment, Health Net is failing to

10  provide covered services in violation of Insurance Code section 10133.56.

11         f.     By implementing policies and procedures applicable only to BH/SUD

12  services and required reimbursement of such services at inapplicable Medicare reimbursement

13  rates, Health Net violated the MHPAEA, and Insurance Code section 10112.27.

14         g.     By engaging in the conduct alleged herein, Health Net's conduct also

15  violates the CLRA.

16      122.    Plaintiffs and Class Members have suffered injury in fact and lost money and

17  property as a result of Health Net and DOES 1 through 100's unlawful business acts and practices

18  by, inter alia, receiving lesser coverage under their PPO Policies, paying unexpected out-of-pocket

19  costs and inflated premiums, and paying out-of-pocket costs and premium amounts in excess of

20  what would have been paid if Health Net and DOES 1 through 100 had accurately disclosed its

21  provider networks.

22      123.    Health Net and DOES 1 through 100's conduct does not benefit consumers or

23  competition. Indeed the injury to consumers and competition is substantial.

24      124.    Plaintiffs and Class Members could not have reasonably avoided the injury each of

25  them suffered.

26      125.    The gravity of the consequences of Health Net and DOES 1 through 100's conduct

27  as described above outweighs any justification, motive or reason therefor and is immoral,

28  unethical, oppressive, unscrupulous, and offends established public policy delineated in California

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 24 -
COMPLAINT

law, the Insurance Code and implementing regulations.

126. Health Net and DOES 1 through 100's acts as described above constitute fraudulent business practices under the UCL.

127. Health Net and DOES 1 through 100's misleading and fraudulent representations, advertising, marketing, and communications are likely to deceive reasonable California consumers. Plaintiffs and Class Members were deceived regarding the provider networks and Health Net's other misrepresentations and omissions as more fully described herein.

128. Health Net and DOES 1 through 100's misrepresentations and omissions were material and were a substantial factor in Plaintiffs' and Class Members' decisions to enroll in and renew their PPO Policies. Such acts are fraudulent business acts and practices.

129. These acts and practices resulted in and caused Plaintiffs and Class Members to pay more for their health plans than they would have absent Health Net and DOES 1 through 100's fraud.

130. Plaintiffs and Class Members have been injured by Health Net and DOES 1 through 100's fraudulent business acts and practices by receiving lesser coverage under their PPO Policies.

131. As a result of Health Net and DOES 1 through 100's violations of the UCL, Plaintiffs seek an order of this Court enjoining Health Net's continued violations. Plaintiffs also seek an order for restitution of all monies paid for Health Net PPO Policies in an amount reflecting the difference in the value of the PPO Policies with the providers as misrepresented at any time since October 1, 2013, and the value of the PPO Policies with the actual reduced provider networks.

132. Plaintiffs and the Class Members are entitled to recover attorney fees and costs pursuant to Code of Civil Procedure section 1021.5, as they are the catalyst for enforcement of important rights affecting the public interest that confer a significant benefit on the general public.

133. Health Net and DOES 1 through 100's conduct described herein was intended to cause injury to Plaintiffs and members of the Class, and was despicable conduct carried on by Health Net and DOES 1 through 100 with a willful and conscious disregard of the rights of

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 25 -
COMPLAINT

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

1  Plaintiffs and members of the Class, subjected Plaintiffs and members of the Class to cruel and

2  unjust hardship in conscious disregard of their rights, and was an intentional misrepresentation,

3  deceit, or concealment of material facts known to the Health Net and DOES 1 through 100 with

4  the intention to deprive Plaintiffs and members of the Class property, legal rights or to otherwise

5  cause injury, such as to constitute malice, oppression or fraud under Civil Code section 3294,

6  thereby entitling Plaintiffs and members of the Class to punitive damages in an amount

7  appropriate to punish or set an example of Health Net and DOES 1 through 100.

8      134.   Health Net and DOES 1 through 100's conduct described herein was undertaken by

9  their officers or managing agents, and was therefore undertaken on behalf of Health Net.  Health

10  Net further had advance knowledge of the actions and conduct of said individuals whose actions

11  and conduct were ratified, authorized, and approved by managing agents whose precise identities

12  are unknown to Plaintiffs at this time and are therefore identified and designated herein as DOES 1

13  through 100.

14                  **SECOND CAUSE OF ACTION**

15      **Violations of Business & Professions Code § 17500, et seq. --**

16           **the California False Advertising Law**

17             **As Against All Defendants**

18      135.   Plaintiffs incorporate by reference each of the preceding paragraphs as though fully

19  set forth herein.

20      136.   Health Net and DOES 1 through 100 violated California's False Advertising Law

21  (Bus. and Prof. Code § 17500, et seq.) by making false and misleading representations in

22  advertising, marketing, and communications regarding provider networks and making other

23  misrepresentations and omissions as more fully described herein.

24      137.   These representations have deceived and are likely to deceive Plaintiffs and Class

25  Members in connection with their decision to purchase their PPO Policies.  Health Net and DOES

26  1 through 100's representations also have deceived and are likely to deceive Plaintiffs and Class

27  Members with respect to the expected costs they would be spending out-of-pocket under their

28  PPO Policies.  Health Net and DOES 1 through 100's representations were material and were a

- 26 -
COMPLAINT

1   substantial and material factor in Plaintiffs' decisions to purchase their PPO Policies. Had

2   Plaintiffs and Class Members known the actual facts, they would not have purchased the PPO

3   Policies and paid out-of-pocket costs and premiums in excess of what they would have paid if

4   Health Net and DOES 1 through 100 had accurately disclosed provider networks and the real

5   terms, coverage and benefits provided by the PPO Policies.

6       138.   Health Net and DOES 1 through 100 directly and indirectly, have engaged in

7   substantially similar conduct with respect to Plaintiffs and to each member of the Class.

8       139.   Health Net and DOES 1 through 100, and each of them, aided and abetted,

9   encouraged and rendered substantial assistance in accomplishing the wrongful conduct and their

10  wrongful goals and other wrongdoing complained of herein. In taking action, as particularized

11  herein, to aid and abet and substantially assist the commission of these wrongful acts and other

12  wrongdoings complained of, each of the Defendants acted with an awareness of his/her/its primary

13  wrongdoing and realized that his/her/its conduct would substantially assist the accomplishment of

14  the wrongful conduct, wrongful goals, and wrongdoing.

15      140.   Plaintiffs and Class Members have suffered injury by Health Net and DOES 1

16  through 100's violation of Business and Professions Code section 17500, et seq.

17      141.   As a result of Health Net and DOES 1 through 100's violations of the Business and

18  Professions Code section 17500, Plaintiffs and Class Members seek an order of this Court

19  enjoining Health Net's continued violations. Plaintiffs also seek an order for restitution of all

20  monies paid for Health Net PPO Policies in an amount reflecting the difference in the value of the

21  PPO Policies with the providers as misrepresented at any time since October 1, 2013 and the value

22  of the PPO Policies with the actual reduced provider networks.

23      142.   Plaintiffs and the Class Members are entitled to recover attorney fees and costs

24  pursuant to Code of Civil Procedure section 1021.5, as they are the catalyst for enforcement of

25  important rights affecting the public interest that confer a significant benefit on the general public.

26      143.   Health Net and DOES 1 through 100's conduct described herein was intended to

27  cause injury to Plaintiffs and members of the Class, and was despicable conduct carried on by

28  Health Net and DOES 1 through 100 with a willful and conscious disregard of the rights of

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 27 -
COMPLAINT

1  Plaintiffs and members of the Class, subjected Plaintiffs and members of the Class to cruel and

2  unjust hardship in conscious disregard of their rights, and was an intentional misrepresentation,

3  deceit, or concealment of material facts known to the Health Net and DOES 1 through 100 with

4  the intention to deprive Plaintiffs and members of the Class property, legal rights or to otherwise

5  cause injury, such as to constitute malice, oppression or fraud under Civil Code section 3294,

6  thereby entitling Plaintiffs and members of the Class to punitive damages in an amount

7  appropriate to punish or set an example of Health Net and DOES 1 through 100.

8      144.   Health Net and DOES 1 through 100's conduct described herein was undertaken by

9  their officers or managing agents, and was therefore undertaken on behalf of Health Net. Health

10  Net further had advance knowledge of the actions and conduct of said individuals whose actions

11  and conduct were ratified, authorized, and approved by managing agents whose precise identities

12  are unknown to Plaintiffs at this time and are therefore identified and designated herein as DOES 1

13  through 100.

14  ### THIRD CAUSE OF ACTION

15  ### Violations of Civil Code § 1750, et seq. -- the CLRA

16  ### As Against All Defendants

17      145.   Plaintiffs incorporate by reference each of the preceding paragraphs as though fully

18  set forth herein.

19      146.   Under Civil Code section 1770, subdivision (a), of the CLRA, the following "unfair

20  methods of competition and unfair or deceptive acts or practices undertaken by any person in a

21  transaction intended to result or which results in the sale or lease of goods or services to any

22  consumer are unlawful":

23      a.   "Representing that goods or services have sponsorship, approval,

24  characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person

25  has a sponsorship, approval, status, affiliation, or connection which he or she does not have." Civ.

26  Code § 1770(a)(5).

27      b.   "Advertising goods or services with intent not to sell them as advertised."

28  Civ. Code § 1770(a)(9).

- 28 -
COMPLAINT

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

c.      "Representing that a transaction confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law." Civ. Code § 1770(a)(14).

d.      "Inserting an unconscionable provision in the contract. Civ. Code § 1770(a)(19).

147.    Here, in connection with Health Net engaging in the initial offering and monthly transactions with consumers that were intended to result, or actually resulted in, the sale of services, Health Net and DOES 1 through 100 have violated the CLRA, Civil Code section 1770, subdivisions (a)(5), (a)(9), (a)(14), and (a)(19) by:

a.      Representing that its PPO Policies have provider network characteristics and other terms and benefits which they do not have.

b.      Advertising its PPO Policies as having provider network characteristics and other terms and benefits with the intent not to sell them as advertised.

c.      Representing that a transaction confers or involves provider network rights, remedies, or obligations which they do not have.

d.      Adopting unconscionable contract provisions implementing inadequate provider networks, and concealing material terms of the coverage.

148.    Such acts and practices were designed or intended by Health Net to convince Class Members to initially purchase and renew their its PPO Policies each month. The CLRA "shall be liberally construed and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection." For purposes of the CLRA, a "'[t]ransaction' means an agreement between a consumer and any other person, whether or not the agreement is a contract enforceable by action, and includes the making of, and the performance pursuant to, that agreement." Civil Code § 1761(e). Here, the "transactions" at issue governed by the CLRA include both the original sale and the renewals of the its PPO Policies made and entered into by Health Net, Plaintiffs and Class Members, as well as Health Net's performance of its obligations under such its PPO Policies. In making decisions whether to initially purchase and renew their its PPO Policies, and

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 29 -
COMPLAINT

1  pay the rates imposed by Health Net, Plaintiffs and other Class Members reasonably acted in

2  positive response to Health Net's misrepresentations as set forth in detail herein, or would have

3  considered the omitted facts detailed herein material to their decisions to do so.

4      149.   Section 1761, subdivision (b), of the CLRA defines "services" as "work, labor, and

5  services for other than a commercial or business use, including services furnished in connection

6  with the sale or repair of goods." Health Net and DOES 1 through 100's ongoing "work and

7  labor" to establish, maintain, and improve BH/SUD provider networks is the core of the PPO

8  Policies at issue here.

9      150.   Health Net and DOES 1 through 100 violated the CLRA by committing unfair and

10  deceptive acts that directly undermined Plaintiffs' and Class Members' ability to access the

11  provider networks. Health Net's unfair and deceptive acts increased patient costs when accessing

12  provider networks and unilaterally reduced treatments and services available from those provider

13  networks.

14      151.   Plaintiffs and the Class Members have suffered harm as a result of these violations.

15  Plaintiffs and Class Members purchased and renewed PPO Policies, reasonably relying on Health

16  Net and DOES 1 through 100's material misrepresentations, inter alia, that certain providers

17  would be in-network. Plaintiffs and members of the Class have also suffered transactional costs

18  by expending time and resources in the form of correspondence and telephone conversations in an

19  attempt to avoid the consequences of Health Net's unfair methods of competition and unfair or

20  deceptive acts. Plaintiffs and Class Members have also suffered opportunity costs by foregoing

21  the opportunity to switch to other coverage offered by other companies during the open enrollment

22  periods.

23      152.   Health Net and DOES 1 through 100's misrepresentations and omissions described

24  herein were intentional, or alternatively, made without the use of reasonable procedures adopted to

25  avoid such an error.

26      153.   Health Net and DOES 1 through 100, directly or indirectly, have engaged in

27  substantially similar conduct to Plaintiffs and to each member of the Class.

28      154.   Such wrongful actions and conduct are ongoing and continuing. Unless Health Net

- 30 -

COMPLAINT

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

1    and DOES 1 through 100 are enjoined from continuing to engage in such wrongful actions and

2    conduct, the public will continue to be harmed by Health Net and DOES 1 through 100's conduct.

3        155.   Health Net and DOES 1 through 100, and each of them, aided and abetted,

4    encouraged, and rendered substantial assistance in accomplishing the wrongful conduct and their

5    wrongful goals and other wrongdoing complained of herein. In taking action, as particularized

6    herein, to aid and abet and substantially assist the commission of these wrongful acts and other

7    wrongdoings complained of, Health Net and DOES 1 through 100 each acted with an awareness

8    of his/her/its primary wrongdoing and realized that his/her/its conduct would substantially assist

9    the accomplishment of the wrongful conduct, wrongful goals, and wrongdoing.

10       156.   Plaintiffs and the Class are entitled to an injunction, pursuant to Civil Code section

11   1780, prohibiting Health Net from continuing to engage in the above-described violations of the

12   CLRA.

13       157.   Plaintiffs and the Class Members are entitled to recover attorney fees and costs

14   pursuant to Civil Code section 1780(d).

15       158.   Plaintiffs and the Class Members are entitled to recover attorney fees and costs

16   pursuant to Code of Civil Procedure section 1021.5, as they are the catalyst for enforcement of

17   important rights affecting the public interest that confer a significant benefit on the general public.

18       159.   Health Net and DOES 1 through 100's conduct described herein was intended to

19   cause injury to Plaintiffs and members of the Class, and was despicable conduct carried on by

20   Health Net and DOES 1 through 100 with a willful and conscious disregard of the rights of

21   Plaintiffs and members of the Class, subjected Plaintiffs and members of the Class to cruel and

22   unjust hardship in conscious disregard of their rights, and was an intentional misrepresentation,

23   deceit, or concealment of material facts known to the Health Net and DOES 1 through 100 with

24   the intention to deprive Plaintiffs and members of the Class property, legal rights or to otherwise

25   cause injury, such as to constitute malice, oppression or fraud under Civil Code section 3294,

26   thereby entitling Plaintiffs and members of the Class to punitive damages in an amount

27   appropriate to punish or set an example of Health Net and DOES 1 through 100.

28       160.   Health Net and DOES 1 through 100's conduct described herein was undertaken by

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 31 -

COMPLAINT

1    their officers or managing agents, and was therefore undertaken on behalf of Health Net. Health

2    Net further had advance knowledge of the actions and conduct of said individuals whose actions

3    and conduct were ratified, authorized, and approved by managing agents whose precise identities

4    are unknown to Plaintiffs at this time and are therefore identified and designated herein as DOES 1

5    through 100.

**FOURTH CAUSE OF ACTION**

**Breach of Contract**

**As Against All Defendants**

9    161.    Plaintiffs incorporate by reference each of the preceding paragraphs as though fully

10    set forth herein.

11    162.    Health Net and DOES 1 through 100 owe duties and obligations to Plaintiffs and

12    members of the Class under the PPO Policies at issue.

13    163.    By misrepresenting provider networks, denying coverage or paying less for medical

14    services on the basis that services were provided by an out-of-network provider, Health Net and

15    DOES 1 through 100 have uniformly breached the terms and provisions of the PPO Policies

16    entered into with Plaintiffs and Class Members.

17    164.    As a direct and proximate result of Health Net and DOES 1 through 100's conduct

18    and breach of contractual obligations, Plaintiffs and members of the Class suffered damages under

19    the PPO Policies in an amount to be determined according to proof at the time of trial.

**FIFTH CAUSE OF ACTION**

**Breach of the Implied Covenant of Good Faith and Fair Dealing**

**As Against All Defendants**

23    165.    Plaintiffs incorporate by reference each of the preceding paragraphs as though fully

24    set forth herein.

25    166.    Through its conduct of misrepresenting provider networks, failing to maintain

26    adequate provider networks, initiating a groundless dragnet SIU investigation and refusal to

27    reimburse out-of-network BH/SUD claims to unduly restrict the availability of out-of-network

28    providers, and reimbursing out-of-network BH/SUD claims with an inapplicable Medicare

- 32 -

COMPLAINT

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1  reimbursement rate in contravention of the express Policy terms, Health Net and DOES 1 through

2  100 have breached their duty of good faith and fair dealing owed to Plaintiffs and members of the

3  Class.

4       167.    Plaintiffs allege that Health Net and DOES 1 through 100 have breached their duty

5  of good faith and fair dealing owed to Plaintiffs and Class Members by other acts or omissions of

6  which Plaintiffs are presently unaware and which will be shown according to proof at trial.

7       168.    As a proximate result of the aforementioned unreasonable and bad faith conduct of

8  Health Net and DOES 1 through 100, Plaintiffs and members of the Class have suffered, and will

9  continue to suffer in the future, damages under the PPO Policies, plus interest, and other

10  economic, non-economic and consequential damages, in an amount to be proven at trial.

11       169.    As a further proximate result of the unreasonable and bad faith conduct of Health

12  Net and DOES 1 through 100, Plaintiffs and members of the Class were compelled to retain legal

13  counsel and to institute litigation to obtain the benefits due under the contracts.  Therefore,

14  Defendants are liable for those attorney fees, witness fees and litigation costs reasonably incurred

15  in order for Plaintiffs to obtain their benefits under the PPO Policies.

16       170.    Health Net and DOES 1 through 100's conduct described herein was intended to

17  cause injury to Plaintiffs and members of the Class, and was despicable conduct carried on by

18  Health Net and DOES 1 through 100 with a willful and conscious disregard of the rights of

19  Plaintiffs and members of the Class, subjected Plaintiffs and members of the Class to cruel and

20  unjust hardship in conscious disregard of their rights, and was an intentional misrepresentation,

21  deceit, or concealment of material facts known to the Health Net and DOES 1 through 100 with

22  the intention to deprive Plaintiffs and members of the Class property, legal rights or to otherwise

23  cause injury, such as to constitute malice, oppression or fraud under Civil Code section 3294,

24  thereby entitling Plaintiffs and members of the Class to punitive damages in an amount

25  appropriate to punish or set an example of Health Net and DOES 1 through 100.

26       171.    Health Net and DOES 1 through 100's conduct described herein was undertaken by

27  their officers or managing agents, and was therefore undertaken on behalf of Health Net.  Health

28  Net further had advance knowledge of the actions and conduct of said individuals whose actions

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 33 -

COMPLAINT

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
WWW.CALLAHAN-LAW.COM

1  and conduct were ratified, authorized, and approved by managing agents whose precise identities

2  are unknown to Plaintiffs at this time and are therefore identified and designated herein as DOES 1

3  through 100.

4                          **SIXTH CAUSE OF ACTION**

5                             **Declaratory Relief**

6                          **As Against All Defendants**

7       172.    Plaintiffs incorporate by reference each of the preceding paragraphs as though fully

8  set forth herein.

9       173.    An actual controversy has arisen between Plaintiffs and the Class Members on the

10  one hand, and Health Net and DOES 1 through 100 on the other hand, as to their respective rights

11  and obligations under the PPO Policies.  Specifically, Plaintiffs and the Class Members contend

12  that Health Net and DOES 1 through 100's conduct of misrepresenting provider networks, failing

13  to maintain adequate provider networks, initiating a groundless dragnet SIU investigation and

14  refusal to reimburse out-of-network BH/SUD claims to unduly restrict the availability of out-of-

15  network providers, and reimbursing out-of-network BH/SUD claims with an inapplicable

16  Medicare reimbursement rate in contravention of the express Policy terms, is prohibited by

17  California law, whereas Health Net and DOES 1 through 100 contend that their conduct was

18  proper.

19      174.    Plaintiffs seek a declaration as to the respective rights and obligations of the

20  parties.

21                          **PRAYER FOR RELIEF**

22      Plaintiffs, on their own behalf and on behalf of the Class, pray for relief as follows:

23      1.      An Order certifying the proposed Class pursuant to Code of Civil Procedure section

24  382 and Civil Code section 1780 et seq. and appointing Plaintiffs to represent the proposed Class

25  and designating their counsel as Class Counsel;

26      2.      An Order enjoining Health Net from continuing to engage in the conduct described

27  herein;

28      3.      An Order awarding Plaintiffs and the Class restitution and such other relief as the

- 34 -
COMPLAINT

1  Court deems proper;

2      4.    An Order awarding Plaintiffs and the Class damages for misrepresenting provider

3  networks and failure to provide coverage under the contracts, plus interest, including prejudgment

4  interest, and other economic and consequential damages, in a sum to be determined at the time of

5  trial;

6      5.    An Order awarding Plaintiffs and the Class punitive and exemplary damages in an

7  amount appropriate to punish or set an example of Defendants;

8      6.    An Order declaring the rights and obligations of Plaintiffs and Class members, on

9  the one hand, and Health Net, on the other, with regard to the business practices alleged;

10     7.    An Order awarding Plaintiffs' attorney fees, costs and expenses as authorized by

11  applicable law; and

12     8.    For such other and further relief as this Court may deem just and proper.

13                        **JURY DEMAND**

14  Plaintiffs demand a trial by jury.

15

16  Dated: May 4, 2018                    **CALLAHAN & BLAINE, APLC**

17

18                        By: _____
                              Daniel J. Callahan, Esq.
19                            Edward Susolik, Esq.
                              Richard T. Collins, Esq.
20                            Damon D. Eisenbrey, Esq.
                              Attorneys for Plaintiffs KATHLEEN
21                            STEINLEY, MARTIN HAROLD STEINLEY,
                              and MARTIN ALEXANDER STEINLEY,
22                            individually and on behalf of others similarly
                              situated
23

24

25

26

27

28

                          - 35 -
                          COMPLAINT

Doc# 1 Page# 36 - Doc ID = 1738080355 - Doc Type = Complaint

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

# ORIGINAL

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):<br>Richard T. Collins (SBN 166577)<br>CALLAHAN & BLAINE, APLC<br>3 Hutton Centre Drive, Ninth Floor<br>Santa Ana, CA 92707<br>TELEPHONE NO.: 714-241-4444    FAX NO.: 714-241-4445<br>ATTORNEY FOR (Name): Plaintiffs KATHLEEN STEINLEY, et al. | FOR COURT USE ONLY<br>**FILED**<br>Superior Court of California<br>County of Los Angeles<br>MAY 04 2018<br>Sherri R. Carter, Executive Officer/Clerk<br>By _____, Deputy<br>Rita Nazaryan |
|---|---|

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
STREET ADDRESS: 111 N. Hill Street
MAILING ADDRESS: Same as Above
CITY AND ZIP CODE: Los Angeles, CA 90012
BRANCH NAME: Stanley Mosk Courthouse

CASE NAME:
KATHLEEN STEINLEY, et al. v. HEALTH NET, et al.

| **CIVIL CASE COVER SHEET** | | **Complex Case Designation** | | CASE NUMBER: BC 7 0 2 2 9 7 |
|---|---|---|---|---|
| [✓] Unlimited (Amount demanded exceeds $25,000) | [ ] Limited (Amount demanded is $25,000 or less) | [ ] Counter [ ] Joinder<br>Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | | JUDGE:<br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

| **Auto Tort** | **Contract** | **Provisionally Complex Civil Litigation** |
|---|---|---|
| [ ] Auto (22) | [ ] Breach of contract/warranty (06) | (Cal. Rules of Court, rules 3.400–3.403) |
| [ ] Uninsured motorist (46) | [ ] Rule 3.740 collections (09) | [ ] Antitrust/Trade regulation (03) |
| **Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort** | [ ] Other collections (09) | [ ] Construction defect (10) |
| [ ] Asbestos (04) | [ ] Insurance coverage (18) | [ ] Mass tort (40) |
| [ ] Product liability (24) | [ ] Other contract (37) | [ ] Securities litigation (28) |
| [ ] Medical malpractice (45) | **Real Property** | [ ] Environmental/Toxic tort (30) |
| [ ] Other PI/PD/WD (23) | [ ] Eminent domain/Inverse condemnation (14) | [✓] Insurance coverage claims arising from the above listed provisionally complex case types (41) |
| **Non-PI/PD/WD (Other) Tort** | [ ] Wrongful eviction (33) | **Enforcement of Judgment** |
| [ ] Business tort/unfair business practice (07) | [ ] Other real property (26) | [ ] Enforcement of judgment (20) |
| [ ] Civil rights (08) | **Unlawful Detainer** | **Miscellaneous Civil Complaint** |
| [ ] Defamation (13) | [ ] Commercial (31) | [ ] RICO (27) |
| [ ] Fraud (16) | [ ] Residential (32) | [ ] Other complaint (not specified above) (42) |
| [ ] Intellectual property (19) | [ ] Drugs (38) | **Miscellaneous Civil Petition** |
| [ ] Professional negligence (25) | **Judicial Review** | [ ] Partnership and corporate governance (21) |
| [ ] Other non-PI/PD/WD tort (35) | [ ] Asset forfeiture (05) | [ ] Other petition (not specified above) (43) |
| **Employment** | [ ] Petition re: arbitration award (11) | |
| [ ] Wrongful termination (36) | [ ] Writ of mandate (02) | |
| [ ] Other employment (15) | [ ] Other judicial review (39) | |

2. This case [✓] is [ ] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties    d. [✓] Large number of witnesses
   b. [✓] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve    e. [✓] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   c. [✓] Substantial amount of documentary evidence    f. [✓] Substantial postjudgment judicial supervision
3. Remedies sought (check all that apply): a. [✓] monetary   b. [✓] nonmonetary; declaratory or injunctive relief   c. [✓] punitive
4. Number of causes of action (specify): Six
5. This case [✓] is [ ] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: May 4, 2018

Richard T. Collins
(TYPE OR PRINT NAME)                                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courtinfo.ca.gov |
|---|---|---|

INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

CM-010

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you must complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)—Personal Injury/Property
  Damage/Wrongful Death
Uninsured Motorist (46) *(if the
  case involves an uninsured
  motorist claim subject to
  arbitration, check this item
  instead of Auto)*

**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death)
Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/
    Wrongful Death
Product Liability *(not asbestos or
  toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice–
    Physicians & Surgeons
  Other Professional Health Care
    Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip
    and fall)
  Intentional Bodily Injury/PD/WD
    (e.g., assault, vandalism)
  Intentional Infliction of
    Emotional Distress
  Negligent Infliction of
    Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
  Practice (07)
Civil Rights (e.g., discrimination,
  false arrest) *(not civil
  harassment)* (08)
Defamation (e.g., slander, libel)
  (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice
    *(not medical or legal)*
Other Non-PI/PD/WD (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease
    Contract *(not unlawful detainer
      or wrongful eviction)*
  Contract/Warranty Breach–Seller
    Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/
    Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open
  book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections
    Case
Insurance Coverage *(not provisionally
  complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
Eminent Domain/Inverse
  Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent
    domain, landlord/tenant, or
    foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal
  drugs, check this item; otherwise,
  report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court
    Case Matter
  Writ–Other Limited Court Case
    Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor
    Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
  *(arising from provisionally complex
  case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of
    County)
  Confession of Judgment *(non-
    domestic relations)*
  Sister State Judgment
  Administrative Agency Award
    *(not unpaid taxes)*
  Petition/Certification of Entry of
    Judgment on Unpaid Taxes
  Other Enforcement of Judgment
    Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified
  above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-
    harassment)*
  Mechanics Lien
  Other Commercial Complaint
    Case *(non-tort/non-complex)*
  Other Civil Complaint
    *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate
  Governance (21)
Other Petition *(not specified
  above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult
    Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late
    Claim
  Other Civil Petition

CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Page 2 of 2

# ORIGINAL

| SHORT TITLE: KATHLEEN STEINLEY, et al. v. HEALTH NET, et al. | CASE NUMBER BC 702297 |
|---|---|

## CIVIL CASE COVER SHEET ADDENDUM AND
## STATEMENT OF LOCATION
## (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

This form is required pursuant to Local Rule 2.3 in all new civil case filings in the Los Angeles Superior Court.

**Step 1:** After completing the Civil Case Cover Sheet (Judicial Council form CM-010), find the exact case type in Column A that corresponds to the case type indicated in the Civil Case Cover Sheet.

**Step 2:** In Column B, check the box for the type of action that best describes the nature of the case.

**Step 3:** In Column C, circle the number which explains the reason for the court filing location you have chosen.

| Applicable Reasons for Choosing Court Filing Location (Column C) |
|---|

1. Class actions must be filed in the Stanley Mosk Courthouse, Central District.
2. Permissive filing in central district.
3. Location where cause of action arose.
4. Mandatory personal injury filing in North District.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.

7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office.
11. Mandatory filing location (Hub Cases – unlawful detainer, limited non-collection, limited collection, or personal injury).

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| Auto Tort | Auto (22) | ☐ A7100  Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1, 4, 11 |
| | Uninsured Motorist (46) | ☐ A7110  Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1, 4, 11 |
| Other Personal Injury/Property Damage/Wrongful Death Tort | Asbestos (04) | ☐ A6070  Asbestos Property Damage | 1, 11 |
| | | ☐ A7221  Asbestos - Personal Injury/Wrongful Death | 1, 11 |
| | Product Liability (24) | ☐ A7260  Product Liability (not asbestos or toxic/environmental) | 1, 4, 11 |
| | Medical Malpractice (45) | ☐ A7210  Medical Malpractice - Physicians & Surgeons | 1, 4, 11 |
| | | ☐ A7240  Other Professional Health Care Malpractice | 1, 4, 11 |
| | Other Personal Injury Property Damage Wrongful Death (23) | ☐ A7250  Premises Liability (e.g., slip and fall) | 1, 4, 11 |
| | | ☐ A7230  Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.) | 1, 4, 11 |
| | | ☐ A7270  Intentional Infliction of Emotional Distress | 1, 4, 11 |
| | | ☐ A7220  Other Personal Injury/Property Damage/Wrongful Death | 1, 4, 11 |

| LACIV 109 (Rev 2/16)<br>LASC Approved 03-04 | CIVIL CASE COVER SHEET ADDENDUM<br>AND STATEMENT OF LOCATION | Local Rule 2.3<br>Page 1 of 4 |
|---|---|---|

| SHORT TITLE: KATHLEEN STEINLEY, et al. v. HEALTH NET, et al. | CASE NUMBER |
|---|---|

| | **A**<br>Civil Case Cover Sheet<br>Category No. | **B**<br>Type of Action<br>(Check only one) | **C** Applicable<br>Reasons - See Step 3<br>Above |
|---|---|---|---|
| **Non-Personal Injury/ Property Damage/ Wrongful Death Tort** | Business Tort (07) | ☐ A6029  Other Commercial/Business Tort (not fraud/breach of contract) | 1, 2, 3 |
| | Civil Rights (08) | ☐ A6005  Civil Rights/Discrimination | 1, 2, 3 |
| | Defamation (13) | ☐ A6010  Defamation (slander/libel) | 1, 2, 3 |
| | Fraud (16) | ☐ A6013  Fraud (no contract) | 1, 2, 3 |
| | Professional Negligence (25) | ☐ A6017  Legal Malpractice | 1, 2, 3 |
| | | ☐ A6050  Other Professional Malpractice (not medical or legal) | 1, 2, 3 |
| | Other (35) | ☐ A6025  Other Non-Personal Injury/Property Damage tort | 1, 2, 3 |
| **Employment** | Wrongful Termination (36) | ☐ A6037  Wrongful Termination | 1, 2, 3 |
| | Other Employment (15) | ☐ A6024  Other Employment Complaint Case | 1, 2, 3 |
| | | ☐ A6109  Labor Commissioner Appeals | 10 |
| **Contract** | Breach of Contract/ Warranty (06)<br>(not insurance) | ☐ A6004  Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2, 5 |
| | | ☐ A6008  Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence) | 2, 5 |
| | | ☐ A6019  Negligent Breach of Contract/Warranty (no fraud) | 1, 2, 5 |
| | | ☐ A6028  Other Breach of Contract/Warranty (not fraud or negligence) | 1, 2, 5 |
| | Collections (09) | ☐ A6002  Collections Case-Seller Plaintiff | 5, 6, 11 |
| | | ☐ A6012  Other Promissory Note/Collections Case | 5, 11 |
| | | ☐ A6034  Collections Case-Purchased Debt (Charged Off Consumer Debt Purchased on or after January 1, 2014) | 5, 6, 11 |
| | Insurance Coverage (18) | ☐ A6015  Insurance Coverage (not complex) | 1, 2, 5, 8 |
| | Other Contract (37) | ☐ A6009  Contractual Fraud | 1, 2, 3, 5 |
| | | ☐ A6031  Tortious Interference | 1, 2, 3, 5 |
| | | ☐ A6027  Other Contract Dispute(not breach/insurance/fraud/negligence) | 1, 2, 3, 8, 9 |
| **Real Property** | Eminent Domain/Inverse Condemnation (14) | ☐ A7300  Eminent Domain/Condemnation          Number of parcels_____ | 2, 6 |
| | Wrongful Eviction (33) | ☐ A6023  Wrongful Eviction Case | 2, 6 |
| | Other Real Property (26) | ☐ A6018  Mortgage Foreclosure | 2, 6 |
| | | ☐ A6032  Quiet Title | 2, 6 |
| | | ☐ A6060  Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2, 6 |
| **Unlawful Detainer** | Unlawful Detainer-Commercial (31) | ☐ A6021  Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer-Residential (32) | ☐ A6020  Unlawful Detainer-Residential (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer-Post-Foreclosure (34) | ☐ A6020F Unlawful Detainer-Post-Foreclosure | 2, 6, 11 |
| | Unlawful Detainer-Drugs (38) | ☐ A6022  Unlawful Detainer-Drugs | 2, 6, 11 |

LACIV 109 (Rev 2/16)

LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM**
**AND STATEMENT OF LOCATION**

Local Rule 2.3

Page 2 of 4

| SHORT TITLE: | CASE NUMBER |
|---|---|
| KATHLEEN STEINLEY, et al. v. HEALTH NET, et al. | |

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C Applicable<br>Reasons - See Step 3<br>Above |
|---|---|---|---|
| **Judicial Review** | Asset Forfeiture (05) | ☐ A6108  Asset Forfeiture Case | 2, 3, 6 |
| | Petition re Arbitration (11) | ☐ A6115  Petition to Compel/Confirm/Vacate Arbitration | 2, 5 |
| | Writ of Mandate (02) | ☐ A6151  Writ - Administrative Mandamus<br>☐ A6152  Writ - Mandamus on Limited Court Case Matter<br>☐ A6153  Writ - Other Limited Court Case Review | 2, 8<br>2<br>2 |
| | Other Judicial Review (39) | ☐ A6150  Other Writ /Judicial Review | 2, 8 |
| **Provisionally Complex Litigation** | Antitrust/Trade Regulation (03) | ☐ A6003  Antitrust/Trade Regulation | 1, 2, 8 |
| | Construction Defect (10) | ☐ A6007  Construction Defect | 1, 2, 3 |
| | Claims Involving Mass Tort (40) | ☐ A6006  Claims Involving Mass Tort | 1, 2, 8 |
| | Securities Litigation (28) | ☐ A6035  Securities Litigation Case | 1, 2, 8 |
| | Toxic Tort<br>Environmental (30) | ☐ A6036  Toxic Tort/Environmental | 1, 2, 3, 8 |
| | Insurance Coverage Claims<br>from Complex Case (41) | ☑ A6014  Insurance Coverage/Subrogation (complex case only) | 1, 2, 5, 8 |
| **Enforcement of Judgment** | Enforcement<br>of Judgment (20) | ☐ A6141  Sister State Judgment<br>☐ A6160  Abstract of Judgment<br>☐ A6107  Confession of Judgment (non-domestic relations)<br>☐ A6140  Administrative Agency Award (not unpaid taxes)<br>☐ A6114  Petition/Certificate for Entry of Judgment on Unpaid Tax<br>☐ A6112  Other Enforcement of Judgment Case | 2, 5, 11<br>2, 6<br>2, 9<br>2, 8<br>2, 8<br>2, 8, 9 |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ A6033  Racketeering (RICO) Case | 1, 2, 8 |
| | Other Complaints<br>(Not Specified Above) (42) | ☐ A6030  Declaratory Relief Only<br>☐ A6040  Injunctive Relief Only (not domestic/harassment)<br>☐ A6011  Other Commercial Complaint Case (non-tort/non-complex)<br>☐ A6000  Other Civil Complaint (non-tort/non-complex) | 1, 2, 8<br>2, 8<br>1, 2, 8<br>1, 2, 8 |
| **Miscellaneous Civil Petitions** | Partnership Corporation<br>Governance (21) | ☐ A6113  Partnership and Corporate Governance Case | 2, 8 |
| | Other Petitions (Not<br>Specified Above) (43) | ☐ A6121  Civil Harassment<br>☐ A6123  Workplace Harassment<br>☐ A6124  Elder/Dependent Adult Abuse Case<br>☐ A6190  Election Contest<br>☐ A6110  Petition for Change of Name/Change of Gender<br>☐ A6170  Petition for Relief from Late Claim Law<br>☐ A6100  Other Civil Petition | 2, 3, 9<br>2, 3, 9<br>2, 3, 9<br>2<br>2, 7<br>2, 3, 8<br>2, 9 |

LACIV 109 (Rev 2/16)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM**
**AND STATEMENT OF LOCATION**

Local Rule 2.3
Page 3 of 4

| SHORT TITLE: KATHLEEN STEINLEY, et al. v. HEALTH NET, et al. | CASE NUMBER |
|---|---|

**Step 4: Statement of Reason and Address:** Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected. Enter the address which is the basis for the filing location, including zip code. (No address required for class action cases).

| REASON: | ADDRESS: |
|---|---|
| ☑ 1. ☐ 2. ☐ 3. ☐ 4. ☐ 5. ☐ 6. ☐ 7. ☐ 8. ☐ 9. ☐ 10. ☐ 11. | |

| CITY: Los Angeles | STATE: CA | ZIP CODE: 90012 |
|---|---|---|

**Step 5: Certification of Assignment:** I certify that this case is properly filed in the _Los Angeles_ District of the Superior Court of California, County of Los Angeles [Code Civ. Proc., §392 et seq., and Local Rule 2.3(a)(1)(E)].

Dated: May 4, 2018

_____
(SIGNATURE OF ATTORNEY/FILING PARTY)

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk.

3. Civil Case Cover Sheet, Judicial Council form CM-010.

4. Civil Case Cover Sheet Addendum and Statement of Location form, LACIV 109, LASC Approved 03-04 (Rev. 02/16).

5. Payment in full of the filing fee, unless there is court order for waiver, partial or scheduled payments.

6. A signed order appointing the Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court in order to issue a summons.

7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.